UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROBERT BRASWELL,

    Plaintiff,

v.                                        CASE No. 8:08-CV-665-T-TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

---

## ORDER

The plaintiff in this case seeks judicial review of the denial of his claim for Social Security disability benefits.[1] Because the decision of the Commissioner of Social Security is supported by substantial evidence and does not contain any reversible error, the decision will be affirmed.

I.

The plaintiff, who was forty-four years old at the time of the administrative hearing and who has a medical degree, has worked as a psychiatrist (Tr. 371-75). He filed a claim for Social Security disability

---

[1]The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 7).

benefits, alleging that he became disabled due to sarcoidosis and neurosarcoidosis (Tr. 73). The claim was denied initially and upon reconsideration.

The plaintiff, at his request, then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff had a severe combination of impairments consisting of "a history of sarcoidosis with uveitis, neurosarcoidosis, a history of seizures, and a cognitive disorder" (Tr. 16). The law judge determined that the plaintiff's mental impairments impose mild limitations in the area of activities of daily living and moderate limitations in the areas of social functioning and concentration, persistence, or pace (Tr. 17). He concluded that, due to these impairments, the plaintiff had the residual functional capacity to perform a limited range of sedentary work (id.). The law judge specified the following limitations (id.):

> The claimant primarily uses his right dominant hand. He should not work in an environment with hazards, or climbing, and he should not work in an area with temperature extremes. The claimant is capable of performing unskilled, low stress jobs defined as 1-2 step processes that are routine and repetitive, working primarily with things other than people at an entry level. The claimant has the ability to occasionally perform postural activities.

The law judge found that these restrictions prevented the plaintiff from returning to past work (Tr. 25). However, based upon the testimony of a vocational expert, the law judge ruled that there were jobs that existed in significant numbers in the national economy that the plaintiff could perform, such as charge-account clerk, surveillance systems monitor, and paramutual ticket checker (Tr. 26). Consequently, the plaintiff was found not disabled (Tr. 27). The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004)(en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

### III.

The plaintiff asserts several challenges to the law judge's decision. None warrants reversal.

The plaintiff argues, first, that the law judge erred in rejecting the functional limitations set out by consulting neuropsychologist, Peter R. Kaplan, Ph.D. (Doc. 10, pp. 14-17[2]). After seeing the plaintiff one time in May 2007, Dr. Kaplan, on a mental medical source assessment form, indicated, among other things, that the plaintiff was moderately limited in his ability to maintain attention and regular attendance (Tr. 319-20). As the Commissioner correctly notes, Dr. Kaplan is not a treating medical source and

---

[2]The page citations are to the numbers at the top of the page.

his opinion is not entitled to controlling weight (Doc. 11, p. 5). McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987). Moreover, the law judge recounted Dr. Kaplan's opinion at length (Tr. 20-21) and concluded that his opinion was entitled to little weight (Tr. 24). Thus, he stated (Tr. 24-25):

> During the evaluation on May 15, 2007, Dr. Kaplan reported that neuropsychological testing had reflected the claimant's vague complaints. He further reported that disability related to subtle right hemisphere functioning were difficult to define and that the problems presented by the claimant were subtle and complex and would require further study in order to understand the interplay of cognitive, medical and behavioral factors. However, the next day on May 16, 2007, Dr. Kaplan opined that based on cognitive and mental health factors the claimant's epilepsy would limit the claimant's employment abilities significantly. In addition, he remarked on a medical source assessment form (mental) that the claimant had moderately severe restrictions in completing a normal workday and workweek without interruptions from psychologically based symptoms. The undersigned finds that the opinion dated May 16, 2007[,] is inconsistent with his remarks a day earlier that showed that additional study was required. Moreover, the record does not reflect that the claimant underwent any additional studies on May 15, 2007, or May 16, 2007. In addition, during the evaluation on May 15, 2007, Dr. Kaplan's [sic] stated that the claimant's attention and concentration were unremarkable, that he had no significant sensory deficits, and that there was no

evidence that the claimant had any expressive or receptive difficulties. Dr. Kaplan also remarked that on the depressive personality pattern scale the claimant showed evidence of at least some somatoform disorder. The undersigned further notes that approximately two months later during a psychological and memory evaluation with Dr. [Melissa] Trimmer, a one time examining [psychologist] the claimant was reported to have experienced a decline from premorbid functioning which would likely have a noticeable effect on his work. However, despite this Dr. Trimmer opined that the claimant would be ca[pa]ble of understanding and following simple and most complex tasks independently. He was capable of maintaining attention and concentration for tasks, and he was also capable of learning new tasks, and making appropriate decisions. D[r]. Trimmer also reported that the claimant was capable of relating and interacting with others, but that he might have mild difficulties dealing with stress. Therefore, the undersigned finds that Dr. Kaplan's opinion dated May 15, 2007, and May 17[sic], 2007 is not supported by the medical evidence as a whole and that he offered no rational[e] for his remarks dated May 17[sic], 2007.

These reasons adequately justify discounting Dr. Kaplan's opinions. Notably, the plaintiff acknowledged at the hearing that Dr. Kaplan had said that "[h]e didn't think that the evaluation would help very much" (Tr. 393). The plaintiff has certainly not demonstrated that the evidence compels a finding that Dr. Kaplan's opinion was entitled to more than little weight.

The plaintiff contends that Dr. Kaplan should have been recontacted for further information (Doc. 10, p. 15). Generally, it is only necessary to recontact a physician if there are gaps in the record. See Gallina v. Commissioner of Social Security, 2006 WL 3028228 (11th Cir. 2006) (unpub. dec.); Johnson v. Barnhart, 2005 WL 1414406 (11th Cir. 2005) (unpub. dec.). In this case, there were no gaps in the record that needed to be filled, particularly in light of the subsequent evaluation by Dr. Trimmer. What the plaintiff is really seeking is an opportunity to bolster the opinion of an examining source that has been found to be unpersuasive. The plaintiff is not entitled under Social Security law to such an opportunity.

The plaintiff contends in a related argument, without citation to authority, that the law judge erred in sending him to Dr. Trimmer, "who is only a psychologist," for a second consultative exam rather than back to Dr. Kaplan, a neuropsychologist (Doc. 10, pp. 16-17). Disregarding the fact that it was probably someone in the Social Security Administration, and not the law judge, who selected Dr. Trimmer, it was entirely reasonable to obtain a second opinion. The law judge apparently viewed Dr. Kaplan's opinion as unpersuasive and it makes sense to obtain an opinion from a different source.

And if Dr. Trimmer had fully agreed with Dr. Kaplan's opinion, Dr. Kaplan's opinion would have added weight.

The plaintiff argues next that the law judge erred by not including a diminished pace limitation and stress-related limitations in his assessment of plaintiff's residual functional capacity (id., p. 17). In fact, the law judge did include such limitations in the plaintiff's residual functional capacity. Thus, essentially recognizing that the plaintiff could not perform fast-paced jobs, the law judge restricted the plaintiff to sedentary work involving unskilled, low-stress jobs defined as 1-2 step processes that are routine and repetitive, working primarily with things other than people at an entry level. This adequately accommodates a diminishment from a fast-paced job. Moreover, it also expressly accommodates a need for a low-stress job.

The plaintiff argues next that the law judge erred in evaluating his manipulative impairments (id., pp. 18-19). He contends that the law judge's opinion is too vague with regard to his restrictions on the use of his hand and that the record supports a more restrictive impairment.

The law judge, in his residual functional capacity determination, stated "[t]he claimant primarily uses his right dominant hand" (Tr. 17). More

pertinently, in his hypothetical question to the vocational expert, the law judge included a restriction "from performing all but sedentary work primarily using the dominant right hand" (Tr. 411). The expert in responding to the question did not express any uncertainty about the meaning of that limitation. Therefore, the restriction was adequately formulated and expressed to the expert. When the law judge relies on the testimony of the vocational expert, the inquiry shifts to the adequacy of the residual functional capacity description contained in the hypothetical to the expert, rather than the residual functional capacity cited in the law judge's decision. Corbitt v. Astrue, 2008 WL 1776574 at *3 (M.D. Fla. 2008).

For his proposition that the evidence supports a greater manipulative restriction, the plaintiff refers to statements from the neuropsychologist and his own testimony (Doc. 10, p. 18). The law judge, however, reasonably discounted that evidence. Moreover, it is not enough to show that the evidence supports a greater restriction; the plaintiff must show that the evidence compels it. Adefemi v. Ashcroft, supra. The plaintiff has not made such a showing.

Next, the plaintiff challenges the law judge's failure to evaluate expressly his wife's testimony (Doc. 10, p. 19). The Commissioner responds that the wife's testimony is cumulative and, therefore, the law judge was not required to evaluate the spouse's testimony (Doc. 11, p. 11).

The plaintiff contends that his wife's testimony shows that his child care activities, which the law judge found not compatible with his alleged fatigue and lengthy naps, are not performed in a meaningful way. The wife indicated that she works from home as a public defender (apparently doing appellate work), the child takes naps, and the child attends part-time daycare (Doc. 10, p. 19). Similarly, the plaintiff testified that the wife works from home (Tr. 380) and that the child is in preschool from 9:00 a.m. until 12:00 p.m. on Tuesday and Thursday (id.). Therefore, the testimony on this issue is duplicative. Accordingly, the wife's testimony was implicitly covered by the credibility determination regarding the plaintiff's testimony. Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981); Osborn v. Barnhart, 2006 WL 2447683 at *10-*11 (11th Cir. 2006)(unpub. dec.).[3]

---

[3]It is noted that, while the plaintiff testified that he could not work due to fatigue (Tr. 381), the wife said that "his big problems [sic] with working is being able to understand people accurately" (Tr. 407). The plaintiff does not rely upon that testimony from the wife. That is understandable since it would have no effect upon the law judge's determination

The plaintiff argues next that the law judge erred in evaluating the plaintiff's fatigue (Doc. 10, pp. 19-21). In this respect, the plaintiff points to studies indicating that fatigue can be a symptom of sarcoidosis and neurosarcoidosis. However, the law judge found "that the medical evidence has shown that the claimant's history of diagnosed sarcoidosis with uveitis has resolved" and that, "while the record shows that imaging studies have shown that the claimant has neurosarcoidosis, the medical evidence shows that the claimant has no symptoms related to this" (Tr. 23). The law judge also noted the plaintiff's own testimony that he had not experienced a seizure since December 2004 (id.). The law judge considered the absence of symptoms from these conditions in discounting the plaintiff's testimony that, due to fatigue, he requires two-hour naps (id.).

The law judge also noted in discounting the plaintiff's testimony about two-hour naps that, just one week before the plaintiff gave that testimony, the plaintiff told the neuropsychologist that he cared for his children while his wife works (id., see Tr. 350). While the plaintiff seeks to

---

of the plaintiff's residual functional capacity, which included restrictions to "unskilled, low stress jobs defined as 1-2 step processes that are routine and repetitive, working primarily with things other than people at a[n] entry level" (Tr. 17).

minimize the time spent watching his three-year old son, the law judge could reasonably discount the testimony of the plaintiff and his wife to that effect in favor of the statement to the neuropsychologist. Thus, the law judge could reasonably conclude that the wife would not be spending two hours of her workday watching the three-year old boy while her husband naps.

Further, the Commissioner in his memorandum points to evidence regarding the plaintiff's daily activities, in addition to watching his son, that are inconsistent with disabling fatigue (Doc. 11, p. 10).

Moreover, there is evidence indicating that the plaintiff's two-hour naps are caused by bad sleeping habits. Thus, the plaintiff had acknowledged to a treating physician that this lifestyle involves "not going to bed early enough" (Tr. 311). The plaintiff "admit[ted] that he would do better if he would get to bed earlier" (Tr. 312; see also Tr. 307, 309, 310, 313). Accordingly, his doctor encouraged him to get more regular sleep (Tr. 307, 308, 309, 310) and to get to bed earlier (Tr. 311), "preferably no later than 11 p.m." (Tr. 312). This evidence undercuts the plaintiff's disability claim since it indicates that the plaintiff's allegation of fatigue and the need for two-hour naps arises not from medical impairments, but from an unhealthy lifestyle.

The plaintiff also asserts that his medications "may" contribute to his fatigue (Doc. 10, p. 20). The plaintiff did not tie his allegation of fatigue into his medication until prompted by a question from his lawyer (Tr. 404). And then he merely said that his fatigue "may be partially because of the medication" (id.). This equivocal testimony could reasonably be discounted by the law judge. Notably, the plaintiff on this issue does not point to any evidence in the record, such as complaints to doctors, supporting an allegation that the plaintiff's medications cause fatigue.

In sum, the law judge expressly considered the plaintiff's testimony that he suffers fatigue that requires two-hour naps. There is substantial evidence in the record, particularly the plaintiff's child care activities, that supports the law judge's discounting of that testimony. The evidence certainly does not compel a contrary conclusion.

Finally, the plaintiff argues that substantial evidence does not support the law judge's finding that the plaintiff can perform the positions of charge-account clerk, surveillance systems monitor, and paramutual ticket checker (Doc. 10, pp. 21-23). These positions, however, were specifically

identified by the vocational expert as jobs that could be performed by someone with the plaintiff's age, education, and residual functional capacity.

The plaintiff, apparently relying upon the Dictionary of Occupational Titles ("DOT"), opines that the plaintiff, with his residual functional capacity, could not perform those three jobs. In making this argument, the plaintiff is essentially undertaking the role of vocational expert. However, he has not presented any authority which permits him to do that. Consequently, his argument does not constitute evidence.

Moreover, even if the plaintiff's argument were considered evidence, it would not outweigh the testimony of the vocational expert. The plaintiff's opinion is seemingly based upon the DOT, and the Eleventh Circuit has held that testimony from a vocational expert "trumps" the DOT. Jones v. Apfel, 190 F.3d 1224, 1229-30 (11th Cir. 1999), cert. denied, 529 U.S. 1089. In all events, the expert's testimony clearly provides substantial evidence supporting the law judge's finding that the plaintiff can perform the jobs of charge-account clerk, surveillance systems monitor, and paramutual ticket checker.

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner is hereby AFFIRMED. The Clerk shall enter judgment accordingly and CLOSE this case.

DONE and ORDERED at Tampa, Florida, this 22nd day of June, 2009.

_____
THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE